UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CHRISTOPHER SHINHOLSTER,

    Plaintiff,

v.                      606CV073

GLENN RICH, *et al.*,

    Defendants.

## ORDER

### I. INTRODUCTION

In this excessive-force, 42 U.S.C. § 1983 case, the Court is presented with a Magistrate Judge's (MJ's) Reports and Recommendations (R&Rs) on the summary judgment motions filed by defendant prison officials. Represented by counsel, former inmate and now plaintiff Christopher Shinholster alleges that, while incarcerated at Rogers State Prison (RSP) in Georgia, he was brutalized by various prison officials in violation of, *inter alia*, his Eighth Amendment rights. Doc. # 2 at 3 ("In [9/04] the Plaintiff was brutally beaten and repeatedly brutalized about his head, face, and body by Defendants Lieutenant Langston, Lieutenant Byrd, and Officer Byrd at [RSP] at the instigation of Defendants Deputy Warden Paul and Deputy Warden Collins and condoned by Warden Rich").[1]

---

[1] There are two defendants last-named "Byrd" in this case: Michael Byrd and Randy Byrd. Disappointingly, the parties persist in failing to amend the caption to spell out *both* of their *full* names, *see, e.g.*, doc. # 82 (caption: "Lieutenant Byrd; Officer Michael Byrd"), then sometimes generically refer to "defendant Byrd" in their briefs, thus needlessly burdening reader comprehension. This has even confused plaintiff's counsel. *See id.* at 19 (objecting, in bold-faced heading, to the MJ's application of the limitations defense to "Michael Byrd" but then, in text, objecting to the recommended dismissal of "Randy Byrd" on those grounds).

In analyzing Shinholster's R&R Objections, the Court will apply S.D.GA.LOC.R. 7.1(b) ("Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion") and therefore disregard unsupported factual assertions. *See, e.g.*, doc. # 82 at 8. The Court also will apply the summary judgment standards recounted in *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

### II. BACKGROUND

Once Shinholster arrived at RSP on 8/14/04, doc. # 32 at 34, other inmates told him about its reputation for violence. Doc. # 32 at 35-40. A year later the Georgia Department of Corrections issued this press release:

> ATLANTA – The Department of Corrections announced today that it has completed the internal investigation into allegations of inmate abuse at Rogers State Prison in Reidsville, Georgia. The completed investigation resulted in the termination of two employees. These two are in addition to seven employees terminated at the conclusion of a previous [Georgia Bureau of Investigation] investigation as requested by Corrections' Commissioner James Donald in May of [2005]. Two employees received disciplinary action short of termination, and two others were returned to duty after being cleared of wrongdoing.

http://www.dcor.state.ga.us/COMMISSIONER/PublicRelations/PressReleases/050819.html (site as of 4/3/06); *see also* 6/16/06 ATLANTA J. CONST. E2, 2006 WLNR 10403679 ("Six former guards have accepted misdemeanor plea deals for their roles in the alleged beatings of inmates at a [Rogers State] prison.... The Rogers warden, Glenn Rich, and deputy warden,

R.D. Collins, were initially suspended by the Department of Corrections. The warden later retired, and the deputy warden was reinstated. Neither was charged with a crime"); *see also Graham v. Rich*, 405CV080, doc. # 127 at 19-20 (S.D.Ga. 9/8/06); *Boyd v. Rich*, 605CV087, doc. # 14 at 17 ¶¶ 5, 6 (S.D.Ga. 11/21/05) (9 employees terminated).

Upon his arrival, Shinholster almost immediately sought transfer to another prison. Doc. # 32 at 38. A prison counselor told him that he had to spend 6 months at RSP before he could get a transfer. *Id.* at 39. Determined, Shinholster wrote Deputy Warden Collins and falsely claimed that Shinholster had a problem with another inmate. *Id.* at 42. An ex-gang member, plaintiff employed language to the effect that "if they don't transfer me I have the ability to make, you know, to cause a problem with [fellow RSP] inmates." *Id.* at 43; *id.* at 43-44 ("Q. -- basically, saying if you don't transfer me, I'm going to cause problems in your institution. A. I'm going to cause a problem with these individuals. Right...."); *id.* at 45 ("Transfer me because I have the power to create trouble in your institution"). He also had his grandmother contact RSP management; she urged them to transfer him so he could be closer to home. *Id.* at 44-45. *See also id.* at 46 ("Q. You were trying to manipulate the situation. A. Right. Q. You were basically trying to get what you want through lying. A. Right").

For good measure, plaintiff did not sign the letter but made it seem like some other inmate wrote it so that Collins would believe that he was being warned by a third party to transfer Shinholster or else face trouble from him. *Id.* at 53 ("I snitched on myself"). He then wrote another, inflammatory letter to Collins and left it in his locker for prison officials to find. *Id.* at 54. The morning after Shinholster sent the first letter, defendants Michael Byrd and Reginald Langston came for him. Doc. # 32 at 51. They searched his locker. "[T]hat," deposes Shinholster, is when they found "the letter that Mr. Collins didn't like that made Mr. Collins upset." *Id.* at 54.

The guards took him to the RSP's visitation area, where "we was met on the walk by Lieutenant Byrd[2] and Deputy Warden John Paul." *Id.* at 55 (footnote added). Randy Byrd told him to face the wall, which he did, and Deputy Warden John Paul then asked him a question he did not hear. *Id.* at 56. Randy Byrd then elbowed him in the back of the head "and he was like, boy, don't you hear the warden talking to you. I said, yes sir. He said, turn around...." *Id.* at 57.

Shinholster suffered (from the "elbow-blow") a "swelling on my forehead. The elbow in my back didn't hurt me much." *Id.* at 59. But it did hurt "all night." *Id.* Plaintiff was unable to identify the discrete amount of pain he felt from that because of "other beatings" described *infra*. *Id.*

In any event, Michael Byrd and Paul took him into Deputy Warden Collins's office, where Collins stood reading Shinholster's "locker" letter. *Id.* at 59-60. Collins stated, "this is one ignorant son of a bitch," *id.*, then asked "you think you are going to run my institution?" *id.* at 61, after which Langston, while Shinholster was handcuffed, "hit me in the side of my face," *id.* "with the side of his knuckles," *id.*, "and when I fell he grabbed me up by my handcuffs, and he told me if I fall again he was going to hit me, so he hit me again.... [i]n the side of the face." *Id.* Shinholster "was just crying and crying," *id.* at 62, but not bleeding. *Id.*

---

[2] Given the caption of this case, the Court will assume that "Lieutenant Byrd" means "Randy Byrd," as opposed to "Michael Byrd." *See supra* n. 1.

2

Collins then asked plaintiff if he aimed to start a riot and Shinholster replied "no sir. And I said, how did I start a riot? And then he said something of the nature, you're not going to run my prison. [¶] Around that time, that is when Michael Byrd hit me from his side, the same way.... -- with his handcuff." *Id.* at 62-63. The prison officials were wearing black gloves at this time. *Id.* at 63. Plaintiff explained:

> When he hit me, I staggered a little bit. I attempted to tell *him* that he shouldn't be hitting me there, and Lieutenant [Michael] Byrd told *him*,³ that is enough, that is enough. Take him to isolation. And they [Langston and Michael Byrd] took me to isolation. They had stopped all movement so nobody could witness anything.

*Id.* at 63 (emphasis and footnote added). When Shinholster reached the isolation area, Langston told him that if he got "permission from the warden, he'd be back again later to beat my ass some more." *Id.* at 63-64. Shinholster suffered the following injuries from the walk to and encounter in Collins's office:

> Q. Hang on a second. Did you have any swelling at all on your face?
>
> A. Yeah.
>
> Q. Where?
>
> A. My forehead for one.
>
> Q. Okay.
>
> A. My jaw for second.
>
> Q. Well, who hit you in the jaw?
>
> A. Michael Byrd.
>
> Q. When was that?
>
> A. The day in Mr. Collins's office.
>
> Q. You described one strike to the back of the head. Where else?
>
> A. Where else?
>
> Q. He hit you one time, right?
>
> A. Not him alone. Both of them was hitting me.
>
> Q. Right, each of them was hitting you?
>
> A. The blows that I received to my face was swelling.
>
> Q. So, on your head, jaw. Anywhere else?
>
> A. In my forehead.
>
> Q. Forehead and jaw. Anywhere else?
>
> A. No.

*Id.* at 80-81. Shinholster claims that, from those blows, he now suffers increased dizziness, involuntary jaw movements, nerve damage on the left side of his face, and chronic headaches. *Id.* at 81-82. He concedes, however, that his pre-incident medical records reflect his complaints of headaches and dizziness stemming from a gunshot wound. *Id.* at 84-94.

### III. ANALYSIS

**A. Governing Standards**

---

³ The Court is unable to determine with certainty who is "he" and "him" here. Deposing counsel should remind witnesses about excessive pronoun usage.

The Eight Amendment's applies to prison officials' use of force against convicted inmates. Courts consider both a subjective and objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind," and (2) "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8, (1992) (quotes omitted). Under the subjective prong, courts apply

> [f]ive factors relevant to ascertaining whether force was used "maliciously and sadistically" for the purpose of causing harm ... : (1) the extent of the injury, (2) the need for application of force, (3) the relationship between the need and the amount of force used, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Johnson v. Moody*, 206 Fed.Appx. 880, 883 (11th Cir. 10/31/06). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *McReynolds v. Alabama Dept. of Youth Services*, 204 Fed.Appx 819, 822 (11th Cir. 2006).

Finally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002); *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341-42 (11th Cir. 2007). And an unconscionable delay in getting an injured inmate medical care also can establish an Eighth Amendment violation. *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005).

### B. Glenn Rich

This case more or less tracks the analysis undertaken in the similar cases of *Hooks v. Rich*, 605CV065 doc. # 106 (S.D.Ga. Order entered 3/28/07) (unpublished), and *Graham v. Rich*, 405CV080, doc. # 178-2 (S.D.Ga. Order entered 1/19/07) (unpublished). The same reasoning employed in those cases applies here. As to the instant case's R&R advising the Court to grant summary judgment to defendant Glenn Rich, the Court agrees that, as in *Hooks* and *Graham*, there is insufficient "knowledge" evidence with which a jury could affix liability against him. Accordingly, the Court *ADOPTS* the R&R (doc. # 70), grants Rich's summary judgment motion (doc. # 39), and *DISMISSES WITH PREJUDICE* plaintiff Shinholster's case against him.

### C. Michael Byrd

To reiterate, Shinholster says that defendant Michael Byrd escorted him to defendant R.D. Collins's office and, while plaintiff was there and in handcuffs, Byrd struck him on the side of his face. Doc. # 72 at 1; *see also* doc. # 32 at 62-63. Worse, plaintiff alleges, Byrd failed to take him for medical treatment thereafter, but instead placed him in solitary confinement for 8 days so that outward evidence of his injuries could heal. Doc. # 72 at 1-2. The Court agrees with the MJ that Shinholster's claims against Michael Byrd are time-barred,[4] so it therefore

---

[4] Objecting to the R&R, Shinholster complains that the MJ failed to consider evidence that the beatings took place on or about the first week of 9/04. Doc. # 82 at 20.

4

*ADOPTS* the R&R (doc. # 72), *GRANTS* Byrd's summary judgment motion (doc. # 35) and *DISMISSES WITH PREJUDICE* plaintiff Shinhholster's case against him.

### D. Reginald Langtson

Named "Regional Langston"[5] on the caption of this case, defendant *Reginald* Langston should be dismissed, the MJ advises, because at most he inflicted *de minimis* injuries upon Shinholster, even accepting as true plaintiff's excessive-force allegations. Doc. # 74 at 3-5.

Eleventh Circuit, *de minimis* harm cases include

> *Crosby v. Monroe County*, 394 F.3d 1328 (11th Cir.2004) (foot in the face causing no injury); *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.2000) (grabbed plaintiff and shoved him a few feet against vehicle, pushed knee in back and head against van, and handcuffed him); *Gold v. City of Miami*, 121 F.3d 1442, 1444 (11th Cir.1997) (handcuffed too tightly and too long); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir.1997) (slammed plaintiff against the wall, kicked his legs apart and required plaintiff to raise hands above head as officers carried out arrest); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir.1993) (pushed plaintiff against wall while handcuffed), *modified*, 14 F.3d 583 (11th Cir.1994); *see also Lee v. Ferraro*, 284 F.3d 1188, 1199-1200 (11th Cir.2002) (discussing these *de minimis* force cases).

*McReynolds*, 204 Fed.Appx. at 822 n. 1; *see also id.* at 822-23 (laceration to juvenile's head suffered when he was beaten by guards at juvenile detention center was sufficiently serious to support Eighth Amendment excessive force claim, where wound required hospital visit and eleven stitches); *Johnson*, 206 Fed.Appx. at 885 (minor injury to finger was *de minimis* and thus did not meet the objective prong of excessive force claim).

Given the claimed swelling and medical complications, it is doubtful that the blows administered here can be dismissed as *de minimis*, even though they cannot be said to equate to those seen in *Hudson,* 503 U.S. at 9 ("blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes"). Plaintiff reports no cracked anything here, only swelling and persistent headaches and dizziness which, defendants correctly point out, could have been caused by pre-existing injuries (this latter point

---

Plaintiff conceded in his deposition, however, that the beating "occurred on August 22 of '04, if not "a day or two before." Doc. # 32 at 217. Under the two-year limitations period, *see* doc. # 72 at 4, he had until 8/22/06 at the latest to file this case. While he filed it on 8/14/06, doc. # 1, he did not include Byrd, whom he knew about when he wrote a 6/18/06 letter to a prison-rights group, doc. # 32 at 214, 216, until he amended his complaint on 8/23/06 (hence, a day late). That amendment cannot relate back to the 8/14/06 filing date. *See Powers v. Graff*, 148 F.3d 1223, 1226-28 (11th Cir. 1998).

Nor can plaintiff even begin to qualify for equitable tolling, doc. # 82 at 20-21 (he argues for it), as he had been *released from prison* weeks before he filed his Complaint and cites nothing to prevent him from including Byrd's name as a defendant then. Finally, Shinholster's exegesis on why administrative exhaustion exceptions should be applied (doc. # 82 at 21-26) is simply incongruous; no one has applied an exhaustion defense here, only the statute of limitations.

[5] His name is Reginald Langston. The Clerk shall correct the docket; all subsequent filings shall conform. *See Poole v. Rich*, 606CV068, doc. # 19 at 1 n. 1 (S.D.Ga. R&R entered 1/8/07) (unpublished) (highlighting Reginald Langston as his correct name and directing the Clerk to correct it on the docket).

is, of course, something for a jury to sort out).

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), however, takes this case over the line from summary to jury disposition:

> The law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or disproportionate force that has *no object but to inflict pain*. This is so whether the prisoner is in a cell, prison yard, police car, *in handcuffs* on the side of the road, or in any other custodial setting. The use of force must stop when the need for it to maintain or restore discipline no longer exists.

*Id.* at 1304 (cite omitted, emphasis added). The "need" for discipline here, a rational jury could conclude, was to make Shinholster feel pain, while handcuffed and engaging in no violence, for writing threatening *letters*. No one here contends that physically smacking around a handcuffed inmate constitutes a normal prison practice necessary to deter *letter* writing, even inflammatory and threatening letters.

The case law has long condoned physical force against inmates who physically threaten a prison official.[6] Letter-writing is demonstrably different, and summary corporal punishment of a *handcuffed* inmate has never been tolerated. *Skrtich*, for that matter, sufficiently clarified the law to strip Langston of qualified immunity, too. The Court therefore *REJECTS* the R&R (doc. # 74) on these grounds.

However, and as is the case with other R&R's referenced herein, the Court agrees with and *ADOPTS* the R&R (doc. # 74) with respect to Shinholster's 18 U.S.C. § 2340[7] and state-law claims. *See, e.g.*, doc. # 74 at 5-7. Langston's summary judgment motion (doc. # 43), then, is *GRANTED* in part and *DENIED* in part.

**E. John W. Paul and R.D. Collins**

The MJ advises the Court to deny summary judgment (hence, qualified immunity) to defendants John W. Paul and R.D. Collins, both supervisors, because they failed to intervene in Shinholster's beating by others. Doc. # 76. Based on the factual recitation set forth *supra*, Part II, the Court agrees with the MJ that a jury should make the call here.[8] The Court therefore *ADOPTS* the R&R (doc. # 76), *GRANTS* in part (on the aforementioned 18 U.S.C. § 2340 and state law claims) and *DENIES* in part (on

---

[6] Indeed, It may be that a few smacks of a handcuffed inmate to "keep him in line" is constitutionally permissible; cases exploring excessive-force conduct in split-second, tense-situation contexts wrestle with this all the time. *See Mannings v. Hightower*, 2007 WL 779711 at ** 5-6 (M.D.Ala. 3/13/07) (unpublished); *Thomas v. Ellis*, 2007 WL 707534 at * 3 (N.D.Fla. 3/5/07) (unpublished); *Cotney v. Bowers*, 2006 WL 2772775 at * 7 (M.D.Ala. 9/26/06) (unpublished); *cf. Baltimore v. City of Albany, Ga.*, 183 Fed.Appx. 891, 897-98 (11th Cir. 2006) (collecting cases bearing subtle distinctions in excessive-force, arrest cases). But here the only thing Shinholster did was fail to verbally respond to defendant Paul's question (the first, "elbow" punch), and write a manipulatively threatening letter (addressed during the second attack against him in Collins's office). There were no "split-second," tense moments here, only an inmate perceived to be in need of an "attitudinal adjustment."

[7] *See Felder v. Howerton*, 240 Fed.Appx. 404, 406 (11th Cir. 2007) (statute assigning criminal liability to persons who commit or conspire to commit torture outside the United States did not apply to state inmate's claims alleging that he was beaten by corrections officers); *Williams v. Barrett*, 2008 WL 476122 at * 1 n. 1 (N.D.Ga. 2/13/08) (unpublished).

[8] The MJ also advises, however, that Shinholster's remaining claims (respondeat-superior based liability, 18 U.S.C. § 2340 and state-law claims) be dismissed pursuant to these defendants' summary judgment motion. The Court agrees.

the § 1983, excessive-force based, failure to intervene claim) the summary judgment motion (doc. # 28) of defendants John W. Paul and R.D. Collins.

**F. Randy Byrd**

The MJ next recommends that the Court grant in part and deny in part defendant Randy Byrd's motion for summary judgment. Doc. # 78. The evidence, the MJ concludes, presents an issue of fact on Shinholster's excessive-force claim against Byrd:

> R. Byrd does not assert in direct terms that there was no excessive use of force against Plaintiff, but Plaintiff contends R. Byrd subjected him to the excessive use of force. (Doc. No. 32, p. 185). There is no evidence of Plaintiff doing anything, such as failing to follow orders, which would require officers to use any amount of force on Plaintiff. *See Walker v. Madison*, 2007 WL 143014, at *1 (S.D. Ga. Jan. 17, 2007) (noting the differences between cases where there is undisputed evidence that the plaintiffs' actions required the use of force by officers and the case where there was disputed evidence as to the need to apply force). Moreover, the Court recognizes the lack of medical evidence supporting Plaintiff's assertion that he suffered injuries as a result of an excessive use of force. Having noted this, however, the Court cannot ignore Plaintiff's assertions that he was afraid to tell anyone about this alleged incident out of fear of being assaulted again (*e.g*, Doc. No. 52, pp. 6-7), the use of force incident allegedly left him with swelling to his forehead and jaw (Doc. No. 52, p. 7; Doc. No. 32, p. 176), that he was put in solitary confinement for eight (8) days until outward evidence of his injuries could heal (Doc. No. 51, p. 4), and that he had an increase in spells of dizziness and the severity and regularity of his headaches after this alleged incident. (Doc. No. 32, pp. 81-82); *see also, Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir. 1996) (recognizing the exacerbation of an inmate's condition was more than a *de minimis* injury). Even Defendant R. Byrd recognizes Plaintiff's chronic headaches could be considered more than a de minimis injury, despite the absence of evidence that these headaches were caused by the alleged use of force incident. (Doc. No. 27, p. 5). Taking Plaintiffs assertions as true, it took more than a week for outward signs of his injuries to heal; this may be an indication that Plaintiff's injuries were more than de minimis. R. Byrd presents issues which cannot be decided in a motion for summary judgment. Much of what R. Byrd contends on Plaintiffs excessive force claim represents determinations which must be reached by a jury, such as the credibility of the parties. Accordingly, R. Byrd is not entitled to summary judgment on Plaintiffs excessive force claim.

Doc. # 78 at 5-6.

The Court agrees with the MJ on this claim, and also agrees that plaintiff's 18 U.S.C. § 2340 and state-law claims should be dismissed pursuant to Byrd's summary judgment motion. The Court therefore *ADOPTS* the R&R (doc. # 78), and *GRANTS* in part and *DENIES* in part the summary judgment motion of defendant Randy Byrd. Doc. # 25.

**IV. CONCLUSION**

Accordingly, the Court *ADOPTS* R&R # 70,

7

***GRANTS*** defendant Glenn Rich's summary judgment motion (doc. # 39), and ***DISMISSES WITH PREJUDICE*** plaintiff Christopher Shinholster's case against him. The Court also ***ADOPTS*** R&R # 72, ***GRANTS*** defendant Michael Byrd's summary judgment motion (doc. # 35) and ***DISMISSES WITH PREJUDICE*** plaintiff Shinhholster's case against him.

Next, the Court ***REJECTS*** R&R # 74 and denies defendant Reginald Langston's motion (doc. # 43) for summary judgment on plaintiff's 42 U.S.C. § 1983, excessive-force claim. However, the Court agrees with and ***ADOPTS*** R&R # 74 with respect to Shinholster's 18 U.S.C. § 2340 and state-law claims (these latter two claims are also dismissed against all other defendants in this case).

The Court also ***ADOPTS*** R&R # 76, and thus ***GRANTS*** in part and ***DENIES*** in part the motion (doc. # 28) of defendants John W. Paul and R.D. Collins for summary judgment.

Finally, the Court ***ADOPTS*** R&R # 78 and ***GRANTS*** in part and ***DENIES*** in part the summary judgment motion of defendant Randy Byrd. Doc. # 25. The Deputy Clerk shall place this case on the next jury trial calendar.

This __24__ day of March, 2008.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA